(636 P.2d 793)

No. 52,590

JESSE COWARD, *Appellee,* v. PAUL LEROY SMITH, *Appellant.*

Opinion filed November 19, 1981.

*Dana W. Killinger,* of Topeka, for appellant.

*Terry E. Beck,* of Tilton, Dillon, Beck & Crockett, of Topeka, for appellee.

Before JUSTICE HOLMES, presiding; MEYER, J.; and HARRY G. MILLER, District Judge Retired, assigned.

HOLMES, J.: This appeal involves a determination of whether monies due an independent contractor for construction services constitute earnings within the meaning of K.S.A. 1980 Supp. 60-2310(a)(1) and are thus partially exempt from garnishment. Jesse Coward obtained a judgment against appellant, Paul LeRoy Smith, in the amount of $12,500.00. Smith is in the roofing and general contracting business and contracted with Hardee's Family Restaurant to reroof two of its buildings. Appellee, Jesse Coward, issued a garnishment to Hardee's and it filed an answer revealing that Hardee's was indebted to Smith in the amount of $9,140.00. The trial court held that money due under a contract with an independent contractor is not earnings under the statute. We agree.

The learned trial court filed a comprehensive memorandum decision as follows:

"MEMORANDUM DECISION

"The above entitled matter comes on for decision upon the motion of the defendant for an order directing the Clerk of the District Court to pay out money. The hearing, wherein evidence was introduced, was held by this Court on August 21, 1980, at which time the matter was taken under advisement pending written briefs.

"The Court has considered all of the evidence and the pleadings in the file and makes the following decision.

"FINDINGS OF FACT

"1.   The defendant/judgment debtor (hereinafter defendant) is in the roofing and general contracting business. Defendant's Reply and Answer para. 1.

"2.   The $9140.00 owed to the defendant by the garnishee Hardee's Family Restaurant is for the reroofing of two buildings. Answer of Garnishee dated July 2, 1980.

"3.   The reroofing was performed in approximately two weeks with labor performed by six or seven other persons employed by the defendant and the defendant himself. Testimony of Paul LeRoy Smith.

"CONCLUSIONS OF LAW

"1.   This case is a matter of first impression. The issue is whether money owed to an independent contractor is earnings within the meaning of K.S.A. [1979 Supp.] 60-2310(a)(1) and thus partially exempt from garnishment.

"2.   It is necessary to set forth the relevant provisions of the Kansas Statute on wage garnishments:

"K.S.A. 1979 Supp. 60-2310(a)(1): 'Earnings' means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise;

(2) 'Disposable earnings' means that part of the earnings of any individual remaining after the deduction from such earnings of any amounts required by law to be withheld;

. . . .

"60-2311 [1979 Supp.]. Discharge of employee due to wage garnishment prohibited. No employer may discharge any employee by reason of the fact that the employee's earnings have been subjected to wage garnishment.

"3.   'The fundamental rule of statutory construction, to which all other rules are subordinate, is that the purpose and intent of the legislature governs when that intent can be ascertained from the statutes.' *Johnson v. McArthur,* 226 Kan. 128, 135, 596 P.2d 148 (1979).

"4.   The defendant was not to be paid by week, month or any other set period. He was to be paid upon the satisfactory completion of the work under the contract. The examples of wages, salary, commission and even bonus all connote a regular pay period. K.S.A. 1979 Supp. 60-2310(a)(1). In computing the amount of the exemption, the statute refers to 'workweek, or multiple thereof'. K.S.A. 1979 Supp. 60-2310(b). Reference to a 'pay period' is also made in K.S.A. 1979 Supp. 60-717(c) which sets forth applicable garnishment procedures.

"5.   The defendant, however, may be within the 'or otherwise' language of K.S.A. 1979 Supp. 60-2310(a)(1). This possibility arises under *Harpster v. Reynolds,* 215 Kan. 327, 524 P.2d 212 (1974). There the judgment debtor was a truck

driver working for the garnishee truck company. The debtor was paid for mileage driven less expenses advanced by the garnishee. The debtor was not paid by week, month or any regular pay period. Instead, his compensation was computed upon completion of each trip. The court found this irregular payment to be a 'complicating factor' but it did not deprive the debtor of protection under the garnishment laws. *Harpster*, supra, at page 332. Thus there is no requirement that the debtor be paid for a regular pay period in order to be covered by K.S.A. 1979 Supp. 60-2310.

"6. The question then becomes whether the legislature intended to bring independent contractors under the wing of K.S.A. [1979 Supp.] 60-2310. This is important because '[t]he general rule is that exemption laws are to be liberally construed in favor of those intended to be benefited and favorable to the objects and purposes of the enactment . . . .'" *Miller v. Keeling*, 185 Kan. 623, 627, 347 P.2d 424 (1959).

"7. In *Miller*, supra, the court was faced with a constitutional challenge to the provision which precluded use of the garnishment procedure if a creditor had assigned a claim to a collection agency. The court, at page 628, set forth the purpose of the wage exemption statute as follows: '[I]t has been said that the purpose of such exemption is to protect a class of persons who are largely dependent on their wages for support, as well as their families and dependents who look to them for a living . . . .'

"8. It must be recognized that *Miller* was construing the statute prior to 1970 when a major revision replaced the narrower exemption·category of salary with earnings. L. 1970 Ch. 238 § 1. The 1970 amendments brought Kansas law into compliance with Title III of the Federal Consumer Credit Protection Act, 15 U.S.C.A. § 1671 *et seq.* This is clear from a comparison of the language in the applicable sections. See also Bennett *1970 Kansas Legislature in Review,* 39 J.K.B.A. 107, 178 (1970).

"9. Relevant principles for analyzing legislative intent were set forth in *Brown v. Keill,* 224 Kan. 195, [200,] 580 P.2d 867 (1978): 'In determining legislative intent, courts are not limited to a mere consideration of the language used, but look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished and the effect the statute may have under the various constructions suggested. [Cite omitted.] In order to ascertain the legislative intent, courts are not permitted to consider only a certain isolated part or parts of an act but are required to consider and construe together all parts thereof *in pari materia.*' Due to the absence of legislative history surrounding the adoption of K.S.A. 60-2310 and 60-2311, an analysis of congressional intent relative to the enactment of the Consumer Credit Protection Act and a review of that Act and the Kansas statute as a whole will be helpful.

"10. In 15 U.S.C.A. § 1671 Congress sets forth its findings which show that it was concerned that unrestricted garnishment of compensation encouraged 'predatory extensions of credit' and resulted in the loss of employment. 15 U.S.C.A. § 1671(a)(1), (2). The chief concern was the prevention of personal bankruptcies. *Kokoszka v. Belford,* 417 U.S. 642, 650 [41 L.Ed.2d 374, 94 S.Ct. 2431] (1974). Thus the restrictions on garnishment were seen as a means to 'relieve countless honest debtors driven by economic desperation from plunging into bankruptcy in order to preserve their employment and insure a continued means of support for

themselves and their families.' H.R.Rep. No. 1040, 2 U.S. Cong. and Admin. News 1962, 1979 (1968).

"11. That the protection offered by Congress was primarily for the wage earner in an employer-employee relationship is seen from the expressions of congressional intent above and the statutory provisions when read *in para materia*. Thus earnings is compensation for *personal services*. 15 U.S.C.A. § 1671(a); K.S.A. [1979 Supp.] 60-2310(*a*)(1). Compensation to an employee is by its very nature for personal services rendered for the employer's benefit. On the other hand an independent contractor generally employs others to perform the labor and his compensation includes more than compensation for his personal services. It includes personal services performed by the contractor's employees, reimbursement for equipment used, and a return on capital. See *Miller Co. v. Givan*, [7 Utah 2d 380, 382,] 325 P.2d 908, 910 (1958).

"12. Concern for the employer-employee relationship is also demonstrated by the enactment of 15 U.S.C.A. § 1674 which prohibits the discharge of an employee by an employer when the employee's wages have been garnished once. K.S.A. 1979 Supp. 60-2311 is even more protective of the employer-employee relationship for it prevents discharge for any number of garnishments.

"13. K.S.A. [1979 Supp.] 60-2310(*b*) and 15 U.S.C.A. § 1672(b) provide for the determination of disposable earnings computed after deduction of amounts to be withheld by law. Deductions withheld by law are social security and withholding taxes. *Marshall v. Dist. Ct. for Forty-First-b Jud. Dist.,* 444 F. Supp. 1110, 1115 (E.D. Mich. 1978). It is the employer who is required to withhold the federal tax on income (26 U.S.C.A. § 3402[a] [1979]), state tax on income (K.S.A. 79-3296[*a*]), and social security tax (26 U.S.C.A. § 3102[a] [1979]) not a party owing money to an independent contractor under a contract.

"14. From a consideration of legislative history and a review of the applicable statute *in pari materia,* this Court concludes that the purpose of the wage garnishment exemption statute is to protect an employee and not an independent contractor. Thus the amount due under a contract of an independent contractor is not earnings within the meaning of K.S.A. 1979 Supp. 60-2310(*a*)(1) and is not exempted from garnishment.

"15. The conclusion reached is supported by the few cases on point. In *Gerry Elson Agency, Inc. v. Muck,* 509 S.W.2d 750, 755 (Mo. App. 1974) the court found that the debtor's relationship to the garnishee had elements of an independent contractor relationship and the debtor was not within the protection afforded by the federal Consumer Credit Protection Act. In *Houston-Starr Co. v. Davenport,* [227 Pa. Super. Ct. 186,] 324 A.2d 495 (1974), the issue before the jury was whether the judgment debtor was a general contractor or an employee of the garnishee working only as a construction supervisor. Under the applicable Pennsylvania statute as interpreted by the court, if the debtor was a general contractor the funds owed him were subject to garnishment. *Houston-Starr Co.,* supra, at page 496. See also *John O. Melby & Co. Bank v. Anderson,* [88 Wis. 2d 252,] 276 N.W.2d 274 (1979); *Brasher v. Carnation Co.,* 92 S.W.2d 573 (Tex. [Civ.] App. 1936).

"16. This Court does not find *Miller Co. v. Givan,* supra, and *Stranger v. Harris,* [77 Colo. 340,] 236 P. 1001 (1925) persuasive. *Stranger* has never been cited by the Colorado courts since it was decided. Further the defendant has not shown that the money owed is for his personal services nor any other reason why

he, as an independent contractor, should receive the protection of the Kansas statute. See *Miller Co. v. Givan,* supra.

"17. The Clerk of the District Court is hereby ordered to pay the $9140.00 now being held in this matter to the plaintiff, Jesse Coward, in partial satisfaction of the judgment for $12,500.00 entered July 24, 1974. . . .

IT IS SO ORDERED."

We concur with the trial court and adopt its memorandum decision as the opinion of the court.

The judgment is affirmed.