## Cecile G. Olson v. Rudolph M. Townsend and Rock of Ages Corporation, Trustee

[530 A.2d 566]

No. 85-080

Present: **Allen, C.J., Hill, Peck, Gibson and Hayes[1], JJ.**

Opinion Filed May 22, 1987

*Bernasconi & Koch*, Barre, for Plaintiff-Appellee.

*Charles F. Yeiser, Jr.*, Worcester, for Defendant-Appellant.

**Per Curiam.** Plaintiff obtained a money judgment against defendant, Rudolph M. Townsend, and subsequently served a trustee summons against the Rock of Ages Corporation (Rock of Ages), for whom defendant had done some survey work. Of the $675.00 owed to defendant by Rock of Ages, the trial court ordered the corporation to turn over $450.08 to plaintiff. Defendant appeals. We affirm.

Defendant earns his living as a self-employed surveyor. He admits he is an independent contractor and was not employed by Rock of Ages. He argues that the money he earns as a surveyor qualifies as "earnings" and is exempt from trustee process under 12 V.S.A. § 3170(b)(1), which states:

---

[1] Justice Gibson and Justice Hayes sat at oral argument but did not participate in this decision.

The earnings of a judgment debtor shall be exempt as follows:

(1) seventy-five percent of the debtor's weekly disposable earnings, or 30 times the federal minimum hourly wage, whichever is greater . . . .

Plaintiff argued below, and the trial court agreed, that defendant was an independent contractor and that the sum owed to him by Rock of Ages did not constitute "earnings" within the meaning of 12 V.S.A. § 3169(b)(1), which states:

the term "earnings" means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program . . . .

The specific issue on appeal is whether the credits held by Rock of Ages for defendant represent "earnings" within the meaning of 12 V.S.A. §§ 3169(b)(1), 3169(b)(3), and 3170(b)(1). Focusing on the definition of "disposable earnings" in 12 V.S.A. § 3169(b)(3), defendant claims that what he was to receive from Rock of Ages for his services should be characterized as "earnings," as that word is commonly understood. Defendant, however, does not focus on the statutory definition of "earnings," which definition is incorporated in the definition of "disposable earnings." In 12 V.S.A. § 3169(b)(1), "earnings" is defined as either "wages, salary, commission, bonus, or otherwise," all words which are commonly understood to apply within an employer-employee relationship. See *John O. Melby & Co. Bank* v. *Anderson*, 88 Wis. 2d 252, 258, 276 N.W.2d 274, 277 (1979) (language of the Consumer Credit Protection Act[2] requires that the Act's protection be extended only to wage garnishments affecting the employer-employee relationship); *Phaneuf* v. *City of Plattsburgh*, 84 Misc. 2d 70, 376 N.Y.S.2d 781, 785 (Sup. Ct. 1974); *Commonwealth ex rel. Cerminara* v. *Cerminara*, 239 Pa. Super. 111, 119-20, 362 A.2d 1011, 1016-17 (1976). By longstanding rules of construction, the words "or otherwise" include other forms of compensation similar in nature to those enumerated. See *Langle* v. *Kurkul*, 146 Vt. 513, 515, 510 A.2d 1301, 1303 (1986). The income defendant received

---

[2] The Consumer Credit Protection Act is the federal counterpart to the Vermont trustee process garnishment statute.

from Rock of Ages could only have been deemed "earnings" within the meaning of 12 V.S.A. § 3169(b)(1) if Rock of Ages had been defendant's employer and defendant had been Rock of Ages' employee. Defendant does not claim he was Rock of Ages' employee, and none of the indicia of such a relationship were present. "Salary" constitutes "a fixed compensation *periodically* paid to a person for *regular* work or services . . . ." *Phaneuf*, 376 N.Y.S.2d at 785. (Emphasis added.) "Wages" are paid to employees, not to independent contractors. See *Fitch* v. *Pacific Fidelity Life Insurance Co.*, 54 Cal. App. 3d 140, 146-47, 126 Cal. Rptr. 445, 449-50 (1975). Neither party claims the defendant's compensation was a "commission" or "bonus." In short, defendant's earnings did not come within the statutory definition of "earnings" under 12 V.S.A. § 3169(b)(1).

Nor do defendant's earnings fall within the statutory definition of "disposable earnings" in 12 V.S.A. § 3169(b)(3), which defendant claims to have received from Rock of Ages. The phrase "disposable earnings" is defined as:

> that part of the earnings of any individual remaining after the deduction from those earnings of any amounts *required by law to be withheld.*

12 V.S.A. § 3169(b)(3) (emphasis added).

It is common knowledge that earnings which are required by law to be withheld typically include such items as federal and state income taxes, social security withholdings, and disability insurance. It is the employer, not the independent contractor, who is legally charged with the duty to withhold these items from his employees' paychecks. Rock of Ages makes no claim that it had a legal duty to withhold these monies from defendant's earnings. Defendant does not contend that Rock of Ages had a duty to make such withholdings. Thus, contrary to defendant's assertions, the compensation owed to him by Rock of Ages cannot be characterized as "disposable earnings" within the meaning of the statutory definition set forth in 12 V.S.A. § 3169(b)(3).

Earnings which do not constitute "disposable earnings" or federal minimum hourly wages are not entitled to the statutory exemption from garnishment provided for in 12 V.S.A. § 3170(b)(1). That statute provides that a judgment debtor's earnings will be exempt to the extent of:

(1) seventy-five percent of the debtor's *weekly disposable earnings*, or 30 times the *federal minimum hourly wage*, whichever is greater . . . .

12 V.S.A. § 3170(b)(1) (emphasis added).

Defendant's earnings were neither paid "weekly" nor pursuant to a "federal minimum hourly wage" scheme. It is a common tenet of statutory construction, where the statutory language is clear and unambiguous, that the plain meaning of the statute controls and must be enforced according to its express terms. *Planned Parenthood of Vermont, Inc.* v. *City of Burlington*, 146 Vt. 348, 352, 503 A.2d 545, 547 (1985). Analysis of all of the applicable statutory language here compels only one conclusion—that defendant's earnings are simply not entitled to the statutory exemption established in 12 V.S.A. § 3170(b)(1).

A review of the case law indicates that courts in at least two other jurisdictions have adopted a similar wage earner limitation. In *Coward* v. *Smith*, 6 Kan. App. 2d 863, 636 P.2d 793 (1981), the court examined the issue of whether money owed to an independent contractor should be "earnings" within the meaning of the Kansas statute, which was also based on the federal act. The court emphasized that the special purpose of the federal act was to protect the wage earner in an employer-employee relationship, and that other legislative concerns included loss of employment, personal bankruptcies, and the predatory extension of credit. It concluded that "the purpose of the wage garnishment exemption statute is to protect an employee and not an independent contractor." *Id.* at 866, 636 P.2d at 797.

The issue was also examined in *Gerry Elson Agency, Inc.* v. *Muck*, 509 S.W.2d 750 (Mo. App. 1974). The Missouri court, noting the absence of state precedent, concluded that the federal act was concerned with protecting the specialized group of "wage earners," and that this protection did not extend to independent contractors. *Id.* at 755. In its analysis, the court noted that the exemption provisions are remedial in nature and should be liberally construed without giving a fixed label to the money due. *Id.* at 752-53. The litmus test, the court said, is whether the funds are "compensation" for "personal services." It concluded:

> It is sufficient for us to conclude that [defendant] under the facts and the law did not qualify for the statutory exemption either under the expressed and recorded intent of Congress

or the terms of the act. He did not come within the descriptive ambit of a wage earner whose income and thus his employment (and the welfare of his family) would be jeopardized by burdensome garnishments or bankruptcy. Neither did his "compensation" depend upon "personal services" as used in the statute.

*Id.* at 755.

We reach the same result under Vermont's statute. Defendant's main argument boils down to the fact that he is compensated as an individual. He finds irrational a statute that distinguishes between individuals who are in an employment relationship, and those who are not. But this distinction is well established in numerous legal contexts. See, e.g., *NLRB* v. *United Insurance Company of America*, 390 U.S. 254, 256 (1968); *Darling* v. *Burrone Brothers, Inc.*, 162 Conn. 187, 193-96, 292 A.2d 912, 917-18 (1972); *Crawford* v. *Lumbermen's Mutual Casualty Co.*, 126 Vt. 12, 17-18, 220 A.2d 480, 483-84 (1966). The Vermont Legislature could have extended the exemptions in 12 V.S.A. § 3170 to all individuals working for compensation, including independent contractors. The language of the Vermont trustee process statute, however, indicates that the Legislature did not intend to do so.

Finally, plaintiff has cross-appealed because the amount of the judgment below was incorrectly computed. This appeal was not timely filed and is therefore dismissed.

*Affirmed.*